IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GUARDIAN INSURANCE CO.**, <br><br> Plaintiff, <br><br> v. <br><br> **SEVERIANO LOPEZ-MARRERO,** <br><br> Defendant. | Civil No. 24-1063 (BJM) |
| **MARINA PDR OPERATIONS LLC** <br><br> Plaintiff, <br><br> v. <br><br> **SEVERINO LOPEZ-MARRERO ; JANE LOPEZ-MARRERO,** <br> Defendants. | Civil No. 24-1064 (BJM) |

## OPINION AND ORDER

Guardian Insurance Co. ("Guardian") brought this federal jurisdiction claim in admiralty and for declaratory judgment pursuant to 28 U.S.C. §§2201-02 against Severiano Lopez-Marrero ("Lopez") alleging (1) the claim filed under the insurance policy was excluded by the policy and no payment was due; (2) the policy was void ab initio because the vessel was unseaworthy, and (3) in the alternative, Lopez is not entitled to the full policy limit and an adjustment of loss needs to be done. Docket No. ("Dkt.") 31. Lopez moved to dismiss Guardian's second and third of these causes of action for failure to state a claim upon which relief could be granted. *See* FED. R. CIV. P. 12(b)(6); Dkts. 35, 54. Guardian opposed. Dkts. 48, 57. The parties consented to proceed before a magistrate judge. Dkt. No. 24.

For the reasons set forth below, Lopez's partial motion to dismiss under Rule 12(b)(6) is **GRANTED**.

# BACKGROUND[1]

On June 7, 2022, Lopez acquired a used 38' 2020, Scout 380LXF, with Hull ID No. SLEPT906K920, named SEACREST ("vessel"). Dkt. 31 at ¶6. Guardian issued marine insurance policy No. MAR14911-22 to cover the vessel on June 16, 2022. *Id.* at ¶7. The insurance policy was renewed on June 16, 2023, under policy no. MAR14911-23. *Id.* at ¶8. The renewal period was from June 16, 2023 to June 16, 2024. *Id.* at ¶9. The vessel was stored in a dry rack at the Puerto del Rey Marina, Fajardo, Puerto Rico. *Id.* at ¶11. Lopez certified he inspected the assigned cradle/rack and that the rack conformed with the vessel's manufacturer's recommendation for dry storage. *Id.* at ¶12.

In March 2023, a crack in the hull of the vessel appeared. *Id.* at ¶45. Lopez alleges he first noticed the damage to the hull on June 23, 2023. *Id.* at ¶13. He notified Guardian about the damage on August 8, 2023, and presented a claim under the policy. *Id.* at ¶14. The next day, Guardian began its investigation of the claim. *Id.* at ¶15.

On August 18, 2023, Island Marine, a contractor authorized to give an estimate on damages, stated the claimed damages were $378,320.00. *Id.* at ¶16. Additionally, Guardian retained E.J. Jimenez & Co. ("Jimenez") to further survey and inspect the damage claimed. *Id.* at ¶17. Jimenez issued a report on September 6, 2023, in which it recommended further testing to determine the exact cause of the claimed damages. *Id.* at ¶18. The same day, Guardian retained Steve Burke, a naval architect. *Id.* at ¶19. Burke inspected the vessel on October 3 and issued a report on October 23. *Id.* at ¶¶20-21. Burke's report concluded the "Vessel's hull had a manufacturing/construction defect arising out of an inadequate infusion process of the resin system. *Id.* at ¶21. Burke also recommended that a non-destructive thermal infrared survey of the hull bottom be conducted in order to determine with certainty if it was a manufacturing/construction defect. *Id.*

---

[1] For purposes of Lopez's Motion to Dismiss, the facts are taken from Plaintiff's Amended Complaint, Dkt. 31, and are presumed to be true.

As a result of Burke's report, Guardian attempted to settle the claim with Lopez before having to incur more expenses on testing. However, they were unable to reach a settlement. *Id.* at ¶23. As such, on November 9, 2023, Guardian retained Offshore Marine Inspections ("Offshore") to conduct a thermographic inspection of the vessel's hull. Offshore inspected the vessel on December 12, 2023, and issued a report on December 29. It concluded the vessel's damages were caused "by non-conformities and/or manufacturers defect or defect which over time were exacerbated to the point of failure from the vessel being moored on a work type-rack." *Id.* at ¶27.

On January 11, 2024, Guardian denied Lopez's claim under the following exclusions in the policy:

> 10. Any loss, damage or expense directly or indirectly caused by or in conjunction with Manufacturing Defects or Design Defects, including Latent Defects.
> 
> 11. The cost of replacing or repairing any item or equipment which has failed as a result of Manufacturing Defects or Design Defects including Latent Defects.
> 
> 14. Wear and tear including but not limited to wear and tear of the stuffing box sealing or packing system.
> 
> 15. Deterioration, (including mold, vermin, or marine life) of any kind, marring, denting, cracking, scratching, chipping, osmosis, blistering, electrolysis, mechanical breakdown (including, but not limited to, any damage machinery as a result of broken hose(s), clamp(s), filter(s), or belt(s), electrical breakdown or derangement, corrosion, rust, lack of maintenance, dampness of atmosphere or weathering.

*Id.* at ¶¶28, 35.

In addition, Guardian alleges Lopez failed in his duty to inspect and certify that the cradle/rack in which the vessel was stored in actually confirmed to the manufacturer's recommendation. If the vessel's damage was caused by the way it was stored, Guardian states no coverage would be afforded either. *Id.* at ¶30. Lopez in turn states the claim is covered and he is entitled to the policy limit of $650,000. *Id.* at ¶31.

Guardian requests the court to declare Lopez's claim is not covered and no payment was due because of the exclusions included in the policy. *Id.* at ¶¶33-36. Next, Guardian requests the court declare the policy was void ab initio because the vessel was unseaworthy at the inception of the policy. *Id.* at ¶¶37-47. Finally, Guardian alleges, in the alternative, that Lopez is not entitled to the $650,000 policy limit and an adjustment of loss needs to be assessed. *Id.* at ¶¶48-55.

## STANDARD OF REVIEW

To survive a motion to dismiss at the pleading stage, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). In evaluating a motion to dismiss, the court first sorts out and discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration marks omitted). The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Id.* Taken together, they must "state a plausible, not a merely conceivable, case for relief." *Id.* At the same time, courts must not "forecast a plaintiff's likelihood of success on the merits." *Id.*

If a court considers materials outside the pleadings, it must give notice to the parties and convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). But where allegations "are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings," and may be considered without triggering conversion. *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Moreover, if the court disregards the supplied materials, notice and conversion is not required. *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir. 1992).

## ANALYSIS

### A. Lopez's Reply Brief

Guardian argues that the reply brief filed by Lopez does not comply with Local Civil Rule 7(c) because it does not address new matters raised in the opposition to the motion to

4

dismiss. Dkt. 57 at 2. Guardian states the reply brief is merely an expansion of Lopez's previous arguments. *Id.* After comparing side by side the memoranda of law that were filed by Lopez in support of his motion to dismiss with the reply brief, it is clear that for the most part they contain the same arguments. As Guardian has stated, a reply memorandum has to be "strictly confined to replying to new matters raised in the objection or opposing memorandum." Local Civil Rule 7(c). Accordingly, the court disregards all sections in the reply brief that do not address new matters raised by Guardian after opposing Lopez's motion to dismiss. *See Colón–Fontanez v. Municipality of San Juan,* 671 F.Supp.2d 300, 308 (D.P.R.2009) (the court disregarded the sections of the defendant's reply memorandum that contained repetitious arguments that already had been made).

**B. Failure to State a Claim**

Lopez moves to dismiss Guardian's claim to declare the policy void ab initio and the adjustment of loss claim for failure to state a claim. As an initial matter, Lopez argues the policy cannot be void due to its unseaworthiness because the policy began its coverage in June 2022 and the vessel was already covered when the policy was renewed in June 2023. Dkt. 35 at 8. That is, although the vessel might have become unseaworthy by the time the policy was renewed on June 16, 2023, it "cannot justify retroactively avoiding the Policy from its inception, that is, on June 16, 2022." *Id.* Additionally, Lopez argues "Guardian waived any argument that it might have had pursuant to the absolute warranty of seaworthiness when it expressly denied Mr. Lopez-Marreo's claim on the basis that it is supposedly excluded by the policy, instead of avoiding the Policy outright." *Id.* at 9. Guardian counters arguing the policy created on June 16, 2023 is a separate policy from the one entered into on June 16, 2022. Dkt. 48 at 7. Additionally, Guardian argues the warranty of seaworthiness can only be waived if done so expressly and they did not do so. *Id.* at 9.

In terms of the adjustment of loss claim, Lopez argues "Guardian does not allege that the Vessel was appraised immediately prior to the loss by a NAMS or SAMS certified surveyor." Dkt. 35 at 10. Additionally, Lopez argues "Guardian is foreclosed by the doctrines of estoppel and

*Guardian Insurance Co. v. Severiano Lopez-Marrero*, Civil No. 24-1063 (BJM)

waiver from seeking a revised adjustment of [Defendant's] claim based on a future appraisal of the Vessel." *Id.* Guardian counters arguing it did not have to appraise the vessel before the loss. Dkt. 48 at 13. Guardian also argue it did not waive the possibility of adjusting the claim because its position was that it did not have to give Lopez a payment under the policy. *Id.* at 15. I discuss each argument in turn.

1. **Insurance Policy is Void Ab Initio Claim**

Lopez first argues the vessel was already covered when the damage occurred and the policy cannot be voided from its inception, *i.e.*, June 16, 2022. Guardian argues the policy was void ab initio because the vessel was unseaworthy prior to the beginning of the policy on June 16, 2023.

Under admiralty law, there is an absolute implied warranty of seaworthiness applicable to all marine insurance contracts. *Underwriters at Lloyd's v. Labarca*, 260 F.3d 3, 7 (1st Cir. 2001). The warranty requires that the insured vessel be seaworthy at the inception of the policy. *Great Lakes Insurance SE v. Andersson*, 89 F.4th 212, 217 (1st Cir. 2023). "If the vessel is not seaworthy at the policy's inception, then the policy is void." *Id.* "A finding of unseaworthiness is not affected by whether the owner was or was not negligent or at fault." *Id.* at 217-18.

Before determining if Guardian has sufficiently pled the vessel was unseaworthy, I must determine whether the renewal of the policy constitutes an extension of the original insurance policy or if it is a new contract. "As a general rule, a renewal of insurance, where there is no provision in the policy for its renewal, is a new contract on the same terms as the old one, while renewal in accordance with a policy provision is simply an extension of the old contract." *Commercial Ins. Co. v. Am. & Foreign Ins. Asso.* 370 F. Supp. 345, 348 (D.P.R. 1974). Here, Guardian has alleged it issued an initial policy on June 16, 2022 to Lopez and that Guardian issued a renewal of the policy on June 16, 2023. Dkt. 31 at ¶¶7-8. Guardian alleged the policy period for the renewal was from June 16, 2023, through June 16, 2024. *Id.* at ¶9. Because all inferences are

taken in favor of plaintiff, these allegations are enough at this time to determine that the renewal is a separate contract.[2]

Having established Guardian has sufficiently alleged the renewal was a separate contract, I turn to whether Guardian has also alleged enough to show that the vessel became unseaworthy before the inception of the renewal contract. Here, Guardian has stated the vessel "suffered from non-conformities and construction defects that started to show [through] the Vessel's hull crack that appeared in March 2023." Dkt. 31 at ¶45. As stated above, the renewal policy began June 16, 2023. Thus, Guardian has sufficiently pled the vessel may have become unseaworthy before the inception of the policy.

Finally, Lopez argues "Guardian waived any argument that it might have had pursuant to the absolute warranty of seaworthiness when it expressly denied Mr. Lopez Marrero's claim on the basis that it is supposedly excluded by the Policy, instead of avoiding the Policy outright." Dkt. 35 at 9. Guardian counters it did not waive the warranty of seaworthiness because it needs to be done expressly under federal law. Dkt. 48 at 9-10.

Before determining whether Guardian waived raising a breach of the warranty of unseaworthiness as a reason for denying coverage, I must determine whether federal or state law is applicable to the issue. "The proprietary of maritime jurisdiction over a suit involving a marine insurance policy is unquestionable." *Windsor Mount Joy Mut. Ins. Co. v. Giragosian*, 57 F.3d 50, 54 (1st Cir. 1995). As such, federal law will apply. However, when there is no federal maritime rule governing a particular issue, state law will apply. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955); *Giragosian*, 57 F.3d at 54. "As there is no specific and controlling federal [maritime] rules involving breach of warranty in contracts of marine insurance, state law applies." *N. Am. Specialty Ins. Co. v. Debis Fin. Servs. Inc.*, 513 F.3d 466, 470 (5th Cir. 2007); *see also QBE Seguros v. Morales-Vazquez*, 2018 WL 3763305, at *12-*13 (D.P.R. Aug. 7, 2018) (applying the waiver doctrine under Puerto Rico law to a marine insurance policy).

---

[2] Lopez can argue again at the summary judgment stage that the renewal was actually an extension of the policy issued on June 16, 2022, but must provide the original policy in order for the court to make a determination.

Under Puerto Rico law, "the doctrine of waiver entails the intentional abandonment or voluntary relinquishment of a right or privilege." *Rodriguez de Oller v. Transamerica Occidental Life Ins. Co.*, 2007 TSPR 98, 2007 WL 1723369 at *6 (P.R. May 30, 2007). Waiver "may be express or implied, and may be manifested by conduct or by words, or by oral or written statements," but the insurer must know of "said right or privilege" and intend "to abandon it." *Id.* However, "an insurer is not permitted to retract the adjustment that it is under obligation to submit to the insured, except in cases of fraud on the part of the claimant or other extraordinary circumstances which the insurer had been unable to discover in spite of a diligent investigation." *QBE Seguros v. Morales-Vazquez*, 2018 WL 2979504, at *2 (D.P.R. June 12, 2018) (citing *Carpets & Rugs Warehouses v. Tropical Reps & Distributors*, 175 D.P.R. 615 (2009)).

In *Carpets & Rugs Warehouses*, the insured brought a complaint against the insurance company for failing to pay the entire policy on a building that had burned down. *Id*. There, the insurance company argued for the first time at the summary judgment stage that the insured had committed fraud, thus voiding the policy because the insured's building was "a two-story mixed construction of concrete and galvanized steel" rather than a "single-story concrete construction" as the insured had described when originally seeking the insurance. *Id*. The Puerto Rico Supreme Court explained that under Puerto Rico law, an insurance company is required to conduct a diligent investigation before making an offer of payment or adjustment, which "include[e] [sic] 1) determining whether the damage event occurred during the validity of the policy; 2) determining whether the insured claimant had an insurable interest; 3) determining whether the damaged property is the property described in the declarations; 4) confirming whether the losses claimed are not subject to risk exclusions; and 5) investigating whether the damage was caused by third-party negligence, so that the insurer may be subrogated in the right to compensation of the insured."." *Id*. Additionally, the Court stated "an insurer is not permitted to retract the adjustment that it is under obligation to submit to the insured, except in cases of fraud on the part of the claimant or other extraordinary circumstances which the insurer had been unable to discover in spite of a diligent investigation." *Id*. "The *Carpets & Rugs Warehouses* Court concluded that the

insurance company had waived its arguments of fraud because it did not raise them during its investigation, and a diligent investigation should have brought to light that the damaged property was not as described in the initial insurance application." *Id.*

Similarly, here, if Guardian had completed a diligent investigation, it would have determined whether or not Lopez had insurable interest. Guardian retained three different experts prior to denying Lopez's claim on exclusions listed in the policy. Guardian knew there was a crack in the hull that appeared in March 2023, and there were nonconformities and construction defects on the vessel. Therefore, Guardian could have known of its right to void the policy because of the vessel's unseaworthiness. By sending a letter denying the claim based on the exclusions included in the policy, Guardian accepted that there was an insured interest, *i.e.*, the vessel. As stated above, an insurer cannot retract from the decision it sent the insured unless there is fraud or another extraordinary circumstance that would not allow the insurer to discover it despite a diligent investigation. Guardian has not alleged any fraud or extraordinary circumstance that would not have allowed it to discover whether or not the vessel was unseaworthy.

As such, Guardian's second cause of action is dismissed with prejudice.

**2.      Adjustment of Loss Claim**

Guardian alleged an adjustment of loss claim in the event this court determines Guardian erroneously denied Lopez's claim. Dkt. 31 at 10. Lopez moves this court to dismiss the claim because Guardian did not appraise the vessel prior to the loss as stated in the valuation clause of the policy[3]. That is, Guardian failed to allege who appraised the vessel, when the appraisal occurred or how much it was appraised for. Dkt. 35 at 10. Guardian argues it was not required to plead that the vessel was appraised immediately prior to the loss because the valuation clause states it can be done after the loss occurs. Dkt. 48 at 13.

---

[3] "In case of total loss or Constructive Total Loss, We will pay the lesser of: (1) limit shown on Section A of the Declaration Page [i.e., $650,000]; (2) the appraisal determining the value of the Insured Watercraft immediately prior to the loss issued by a NAMS or SAMS Certified Marine Suveyor selected by us, including appraisals conducted after the loss; or [3] sale price, if the Insured Watercraft was for sale at any time prior to the loss." Dkt. 54-1 at 8 (emphasis added).

9

While Guardian is correct that the appraisal can be done after the loss has occurred, Guardian has failed to allege any appraisal was done and what was the value of the vessel during the appraisal. Guardian has not provided any facts from which the court could glean a plausible cause of action. It is true Guardian can plead a cause of action in the alternative, however, "there [still needs to] be good grounds to support the allegations in a complaint." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1282 (4th ed. 2024). Guardian has failed to do so. As such, Lopez's motion to dismiss the third cause of action is granted without prejudice.

## CONCLUSION

For the foregoing reasons, Lopez's motion to dismiss for failure to state a claim is **GRANTED**. Guardian's second cause of action is dismissed with prejudice. Guardian's third cause of action is dismissed without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of December 2024.

S/ Bruce J. McGiverin
BRUCE J. MCGIVERIN
United States Magistrate Judge
